UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x
                              :

UNITED STATES OF AMERICA          :

                               :

        -v.-                 :

                               :

CIRO PERRONE, and              :   S2 05 Cr. 774 (KMW)
STEVE BUSCEMI,                :

                               :

                               :

              Defendants.        :

                               :

- - - - - - - - - - - - - - - - - - - x

**GOVERNMENT'S RESPONSE TO DEFENDANTS' POST-TRIAL MOTIONS FOR
ACQUITTAL PURSUANT TO RULE 29**

                                                                      MICHAEL J. GARCIA
                                                                      United States Attorney
                                                                      Southern District of New York
                                                                      Attorney for the United States
                                                                         of America

BENJAMIN GRUENSTEIN
ELIE HONIG
Assistant United States Attorney

    - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - x
                                       :
UNITED STATES OF AMERICA               :
                                       :
          -v.-                         :
                                       :
CIRO PERRONE, and                      :   S2_05 Cr. 774 (KMW)
STEVE BUSCEMI,                         :
                                       :
                                       :
          Defendants.                  :
                                       :
- - - - - - - - - - - - - - - - - - - x

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' POST-TRIAL MOTIONS FOR ACQUITTAL PURSUANT TO RULE 29**

**<u>PRELIMINARY STATEMENT</u>**

The Government respectfully submits this Memorandum of Law in response to the post-trial motions for acquittal pursuant to Rule 29 filed by defendants Ciro Perrone ("Perrone Br.") and Steve Buscemi ("Buscemi Br."). Perrone makes two arguments in his motion: (1) that the Government offered insufficient proof of venue as to the charged loansharking and gambling conspiracies, and (2) that the Government did not offer proof on which basis any rational jury could convict Perrone of the charged loansharking and gambling conspiracies. As discussed further below, both of these arguments rely on flagrantly self-serving and conclusory misstatements of the facts, as well as unsupported and erroneous representations of the governing law. Perrone's motion should be denied in its entirety.

Buscemi appears to make two arguments as well. First, Buscemi seems to claim that the RICO conspiracy charge should be

dismissed because he was not and could not have been found guilty on two or more of the specific racketeering acts charged in the substantive RICO count.  Buscemi previously made the same argument, without authority and without success, countless times to the Court during trial.  Second, Buscemi, like Perrone, essentially denies all guilt, places an unabashedly self-serving spin on every piece of the Government's evidence, and then claims entitlement to Rule 29 acquittal.

## I.   Legal Standards Governing Rule 29

A defendant challenging the sufficiency of the evidence pursuant to Rule 29 "bears a heavy burden."  United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003) (quoting United States v. Finley, 245 F.3d 199, 202 (2d Cir. 2001)); United States v. Si Lu Tian, 339 F.3d 143, 150 (2d Cir. 2003).  A jury's verdict must be upheld if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also United States v. Glenn, 312 F.3d 58, 63 (2d Cir. 2002); United States v. Payton, 159 F.3d 49, 55-56 (2d Cir. 1998).  "In other words, the court may enter a judgment of acquittal only if the evidence that the defendant committed the crime is 'nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999) (citation omitted).

In considering a Rule 29 motion, the Court should "review all of the evidence presented at trial in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government." United States v. Walker, 191 F.3d 326, 333 (2d Cir. 1999) (internal quotation marks omitted); accord United States v. Martinez, 54 F.3d 1040, 1042 (2d Cir. 1995). Even where "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [the Court] must let the jury decide the matter." United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000) (internal quotation marks omitted). Thus, the task of choosing among the permissible competing inferences that can be drawn from the evidence is for the jury, not for the reviewing court. See, e.g., United States v. Jackson, 335 F.3d at 180 ("courts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal") (citing Guadagna, 183 F.3d at 129 ("Rule 29© does not provide the trial court with an opportunity to substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury.")); United States v. Matthews, 20 F.3d 538, 548 (2d Cir. 1994) (stating that Court must affirm conviction "so long as, from the inferences reasonably drawn from the record as a whole, the jury might fairly have concluded that the defendant was guilty beyond a reasonable doubt").

"The fact that a trier of fact has declined to draw one of two or more competing inferences does not mean that the inferences drawn were not available or were not reasonable." United States v. Rosa, 17 F.3d 1531, 1542 (2d Cir. 1994); see also United States v. Plitman, 194 F.3d 59, 67 (2d Cir. 1999) ("Even if there had been evidence regarding these [defense] theories in the record, the jury was free to reject it"). Accordingly, "the government need not 'exclude every reasonable hypothesis other than that of guilt.'" Guadagna, 183 F.3d at 130 (quoting Holland v. United States, 348 U.S. 121, 139 (1954)); see Martinez, 54 F.3d at 1042 ("it is the task of the jury, not the Court, to choose among competing inferences"); United States v. Sureff, 15 F.3d 225, 228 (2d Cir. 1994) (evidence "need not exclude every possibly hypothesis of innocence") (internal quotation marks and citation omitted); United States v. Chang An-Lo, 851 F.2d 547, 554 (2d Cir. 1988); Autuori, 212 F.3d at 114 (the Government "need not negate every theory of innocence").

## II. Perrone's Motion

Both proffered bases for Perrone's motion for acquittal are meritless and should be denied.

### A. The Government Provided Ample Proof Of Venue

#### 1. Relevant Facts

The Government proved venue at trial over the loansharking conspiracy charges by showing that Joe Gorgone - a

4

loansharking victim of Perrone's – made a phone call on May 6, 2005, from a pay phone in Manhattan to John Yannucci, who was Perrone's primary lieutenant in the loansharking operation.  (Tr. 890-91; GX-1087).  During that call, which followed a series of calls between Gorgone and Yannucci about Gorgone's ongoing repayment of a loan made by Perrone, Gorgone left the following voicemail message for Yannucci:

> Hey, John, it's Joey, it's 11, around 11:00 o'clock on, um, Friday.  My father is still in the hospital.  I haven't been able to run around.  I just been there and with my mother at her house.  He's not doing too good.  But that aside, I need a little slack, a little more slack.  Uh, if it's okay, I hope Tuesday I'll be there.  I'll bring 5 times 3, and I'll be ahead of the game.  But one way or another, no matter what and, uh, uh, I appreciate the uh, understanding.  Alright, I'll talk to you later.

(Tr. 890-91; GX-1087).  Gorgone made the call from phone number (212) 779-2903.  (Tr. 890-91; GX-1087).  Because the defendant refused to stipulate to such an uncontroverted fact, the Government called a witness, Robert France, from Telebeam Telecommunications Corporation, the company that owns that pay phone assigned number (212) 779-2903.  (Tr. 2943).  Mr. France testified that the pay phone was located at 585 Second Avenue in Manhattan.  (Tr. 2947). The Government also offered in evidence a certificate showing that the pay phone was in fact located at 585 Second Avenue in Manhattan.  (Tr. 2945; GX 521).

The Government proved venue over the gambling

conspiracy charges through the testimony of John Vitale, a cooperating witness.  Vitale testified, first, that he was a longtime, habitual gambler who had placed sports bets with Perrone's gambling operation nearly every day over a period of several years.  (Tr. 1295-1301).  On numerous occasions, Vitale would call in sports bets to Perrone's bookmakers while he was making meat deliveries in Manhattan.  (Tr. 1336-37).  Also, during the annual week-long San Gennaro Festival in Manhattan, at which Vitale ran a food stand, Vitale would call in his sports bets to Perrone's bookmakers from Manhattan.  (Tr. 1337).  Vitale further testified that he witnessed a meeting at Perrone's social club between Perrone, Yannucci, and other organized crime members; Vitale later learned that the meeting was about a gambling debt owed to Perrone, and that Perrone and Yannucci had a subsequent meeting with these organized crime figures in Manhattan about that debt.  (Tr. 1410-1413).

### 2.  Discussion

The Government proved venue by the required preponderance of the evidence over the charged loansharking and gambling conspiracies.  See United States v. Ramirez, 420 F.3d 124, 139 (2d Cir. 2005) ("Because venue is not an element of a crime, the government need establish it only by a preponderance of the evidence.") (citation omitted).  The Government introduced evidence at trial that, viewed in the light most favorable to the

Government (as required under Rule 29) or even in a light favorable to the defendants, proves that at least one act in furtherance of each conspiracy took place in Manhattan. <u>See</u> <u>United States v. Geibel</u>, 369 F.3d 682, 696 (2d Cir. 2004) ("Venue is proper in a district where (1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue.") (citation omitted).

The Government established venue over the loansharking conspiracies through the phone call made by Gorgone, from a pay phone in Manhattan, to Yannucci. Perrone does not contest the fact that Gorgone placed the call from Manhattan. Rather, Perrone contends that "there is no proof that this call related to any extortionate activities." (Perrone Br. 4). That is plainly wrong. In his message, Gorgone referred clearly to the loan he had taken from Perrone, and Gorgone begged Yannucci for more time during which to make repayment. Gorgone stated: "I need a little slack, a little more slack. Uh, if it's okay, I hope Tuesday I'll be there. I'll bring 5 times 3, and I'll be ahead of the game. But one way or another, no matter what and, uh, uh, I appreciate the uh, understanding." (Tr. 890-91; GX-1087). Gorgone asked Yannucci for "a little more slack" – meaning, for more time to make his weekly repayment to Perrone.

Gorgone's reference to "5 times 3" referred to the amount of his weekly payment - $500 (Tr. 1396) - times the three weeks worth of payments Gorgone proposed to pay at once.  Perrone nonetheless contends that any loan to Gorgone was not extortionate because Gorgone was not in fear of Perrone.  As discussed more fully below, however, that argument fails as a matter of fact and as a matter of law.  The calls, taken together, prove that Gorgone in fact feared the consequences of failing to repay Perrone, and, in any event, the Government need not even prove so much, because all the law requires is that a borrower reasonably would have feared the consequences of non-repayment, and that the lender took steps to promote fear.

On the gambling conspiracy, Perrone does not contest that Vitale's testimony – about placing sports bets with Perrone's operation from Manhattan and about the meeting that Perrone and Yannucci attended in Manhattan – satisfied the factual requirement for venue.  Perrone simply asserts in conclusory fashion that "Vitale's patently inconsistent and patently incredible testimony ... cannot be credited."  (Perrone Br. 4).  That argument, first and most obviously, overlooks the abundant independent evidence that corroborated Vitale's testimony, including the recordings of Perrone and his subordinates discussing the very same criminal activities about which Vitale testified.  That argument also overlooks the fact

8

that Vitale's testimony is firmly supported by common sense: a
habitual gambler like Vitale would have no reason to suspend his
daily gambling habit during those days and weeks when he worked
in Manhattan.  And, in the end, Perrone's argument that, in
Perrone's view, Vitale should not be credited is beside the
point; the question is whether any rational trier of fact could
have credited Vitale's amply-corroborated testimony.  See Glenn,
312 F.3d at 63.  When the evidence is taken in the light most
favorable to the Government, as it must under Rule 29, see
Walker, 191 F.3d at 333, it easily supports venue, by the
required preponderance of evidence, and more.

**B.   The Proof At Trial Was Sufficient To Prove Perrone's
       Participation In The Loansharking And Gambling
       Conspiracies**

    **1.   Applicable Facts**

The Government introduced overwhelming evidence at
trial of Perrone's involvement in the charged loansharking and
gambling conspiracies.  Without re-summarizing the entirety of
the Government's case, that evidence included the following:  (1)
Vitale's testimony that Perrone ran an extensive loansharking
operation and gambling operation (E.g., Tr. 1309-1311; 1338-52);
(2) Vitale's testimony about his own conversations with Perrone
and Perrone's underlings about those criminal enterprises  (E.g.,
Tr. 1308-12; 1396; 1338-52; GX-1033); (3) Vitale's testimony
about his own participation in Perrone's loansharking and

9

gambling operations, including Vitale's receipt and delivery of cash payments to and from Perrone and other co-conspirators acting on Perrone's behalf (<u>E.g.</u>, Tr. 1308-12; 1338-52); (4) a recorded phone call in which Vitale requested a loan of $5,000 from Perrone, through Yannucci, and Vitale's testimony about his use of the code "five steaks" to indicate that he wanted to borrow $5,000 from Perrone (Tr. 1396, GX-1033); (5) a series of recorded calls between loansharking victim Gorgone and John Yannucci about repayment of a loan to Perrone, through Yannucci, during which Gorgone pleaded Yannucci for more time to make repayment, expressed gratitude to Yannucci and Perrone, and referred to the specific terms of the loan (Tr. 883-890; GX-1002; 1067; 1068; 1070; 1070A; 1080; 1081; 1083; 1084; 1085; 1087); (6) the testimony of Eugene Coizza that he had taken a loan from Perrone at "two points" interest (Tr. 2800-01), and two recorded calls between Perrone, Yannucci, and Coizza, during which Perrone threatened Coizza because Coizza had put Perrone on the "pay me no mind list," as well as Coizza's testimony that he repaid the entire $12,000 loan shortly after getting that call from Perrone (Tr. 2842; GX-1021, 1041); (7) a series of recorded conversations at Don Peppe's restaurant during which Perrone and others discussed their loansharking and gambling operations, including one conversation in which Yannucci told Perrone and others that he knew they were engaged in "shylocking," and in which Perrone

discussed the importance of using "strength" to collect debts (Tr. 2064-2068; GX-2014, 2015); (8) recorded phone calls between Perrone and Yannucci about money owed to Perrone by a worker in Perrone's gambling operation, and a subsequent recorded phone call between Yannucci and that individual about payment of "the monthly" to Perrone; (Tr. 2271, GX-1064, 1065); (9) recorded conversations between Perrone and Yannucci about the revenues of an illegal card game, and about the loss of an ongoing poker game to a law enforcement raid (GX-1004, 2013); (10) testimony from Vitale, as well as Kieran Flynn and defense witness Margaret Buscemi, about video poker machines, which Vitale testified were owned by Perrone (Tr. 1316-1323; 2704-05); (11) Vitale's and Flynn's testimony about placing sports bets with members of Perrone's sports gambling operation (Tr. 1295-1305; 2704-05; 2735-44); (12) documentary evidence showing Flynn's placement of sports bets with members of Perrone's gambling operation (Tr. 2730-33; 2742-48; GX-510, 511); and (13) testimony from Flynn as well as eyewitness Daniel Paoletti about an assault carried out by one of Perrone's henchmen to enable Perrone to avoid paying a gambling debt (Tr. 2753-58; 2956-60).

**B. Discussion**

Perrone repeatedly and summarily asserts that "there is not one scintilla of evidence" (Perrone Br. 5) linking him to the charged conspiracies.  As set forth in more detail above,

however, the Government amply proved Perrone's involvement in both the loansharking and the gambling operations.  Perrone's unsupported claim that there was no evidence simply does not overcome the force of the Government's evidence.  And Perrone's blanket denials do not even approach satisfying the Rule 29 requirement that no rational trier of fact could have found Perrone guilty based on the evidence discussed above.  That is particularly so given that the evidence must be taken in the light most favorable to the Government, pursuant to Rule 29.

Perrone also argues that the Government did not prove that two loansharking victims, Gorgone and Coizza, actually were explicitly threatened, and actually feared Perrone.  (Perrone Br. 5-6).  First, that argument is wrong as a factual matter.  The Government introduced a series of recorded calls in which Gorgone pleaded for more time in which to repay Perrone, and in which Gorgone's own words betray the natural fear that any rational person would experience upon not being able to repay a loan to a widely-known Genovese Family capo like Perrone.  Gorgone's fear in those calls – which must be taken in the light most favorable to the Government – is palpable.  Similarly, Coizza's fear was obvious as he testified about the loan he took from Perrone; Coizza admitted that he took a loan from Perrone, at two points interest, but made the preposterous claim that he only paid that interest because he had asked Perrone permission to do so.  Any

rational jury would be well-grounded to conclude that Coizza's testimony about the circumstances of the loan was governed in large part by his very fear of Perrone.  Most obviously, a rational jury could see Coizza's fear in the phone call in which Perrone angrily asked Coizza if Coizza had put Perrone on the "pay me no mind list"; Coizza responded by stammering that he would re-pay Perrone as soon as possible.  (GX-1041).  Not surprisingly, shortly after this call, Coizza – who was in desperately poor financial condition – managed to repay the entire $12,000 he had borrowed from Perrone.  Again, any rational finder of fact could and should conclude that Coizza feared Perrone.

Of course, as a legal matter, Perrone's argument that Gorgone and Coizza did not actually fear him is completely beside the point.  The relevant legal inquiry is not whether the borrowers actually feared, or were actually threatened, as Perrone casually assumes in his motion, without citing any supporting authority.  The relevant legal question with respect to Count Six, the violation of Title 18, United States Code, Section 892 – conspiracy to make extortionate loans – is, as the Court instructed the jury without objection from Perrone:

> the understanding of the lender and borrower at
> the time of the extension of credit that delay or
> failure to pay either principal or interest could
> result in a use of violence or other criminal
> means to cause harm to the person, reputation or
> property of any person.   In this context, the

13

> word "understanding" means merely the
> comprehension or awareness of the parties. The
> statute does not require proof of express
> threats. What is required is that the threat of
> violence exist, and that it be understood by the
> borrower.

(Tr. 4174-75). <u>See also United States v. Madori</u>, 419 F.3d

159, 167-68 (2d Cir. 2005) (same). And the relevant legal

standard under Count Seven, Title 18, United States Code, Section

894 - conspiracy to use extortionate means to collect a loan - is,

as the Court instructed the jury, without objection from the

defense:

> "Extortionate means" are any means that involve
> the use or an express or implicit threat of use,
> of violence or other criminal means to cause
> harm to the person, reputation, or property of
> any person. <u>The creditor's actions need not
> actually frighten the debtor</u>. You need only
> find that the creditor intentionally took
> actions which reasonably would induce fear in an
> ordinary person. <u>This element then is directed
> at the conduct of the creditor, and not at the
> state of mind of the victim</u>.

(Tr. 4173) (emphases added). <u>See also</u> <u>United States v. Chen</u>, 378

F.3d 151, 154 (2d Cir. 2004) (same).

Perrone does not even address the proper legal

standards in his motion. As the trial evidence made abundantly

clear, any reasonable person who took a loan from Perrone would

be amply justified in fearing the consequences of non-repayment;

the borrowers fully understood that non-repayment could be met

with violence or force; Perrone and his co-conspirators took

steps to promote fear in an ordinary person; and the threats of

14

harm to the debtors by Perrone were both explicit and implicit.
The Government's evidence, viewed favorably to the Government,
almost allows no contrary conclusion, and certainly would be
within the realm of what a rational jury could find.

**III. BUSCEMI'S MOTION**

Like Perrone, Buscemi's Rule 29 motion consists of no
more than a categorical denial of guilt, a conclusory and self-
serving allegation that there was no evidence at trial, and a
generalized statement of the law without absolutely no support.
Buscemi's motion fails both as a matter of fact and as a matter
of law.

**A.   The Charged RICO Conspiracy**

First, Buscemi appears to make a legal argument that,
because he was not convicted (or even charged), with two or more
of the racketeering acts charged in Count One, he could not
possibly have been convicted on Count Two.  (Buscemi Br. 2-6).
Buscemi made that argument repeatedly to the Court throughout
trial, without ever citing any authority to support his position;
Buscemi continues to cite no support in his brief.  Buscemi's
argument is inconsistent with the Court's proper jury
instructions on this issue, as well as the supporting authority.
As the Court instructed the jury:

> You do not need to find, however, that the
> defendant you are considering committed or
> agreed to commit any of the racketeering acts
> charged in Count 1 in order to find him guilty

15

> of the racketeering conspiracy.  You need only
> find that he became a member of the conspiracy
> and adopted the goal of furthering or
> facilitating the criminal endeavor charged in
> Count 1.

(Tr. 4189).  Indeed, during deliberations, the jury asked a

question about this precise issue.  The jury asked "Do we need to

prove RICO substantive in order to prove guilty on Count 2 RICO

conspiracy?" (Tr. 4265, GX-14).  The Court answered – correctly

and with the consent of all parties, including Buscemi – "No,"

and then referred the jury back to the above-cited portion of the

jury charge.  (Tr. 4269).  Undeterred by this Court's prior

rulings and the governing case law from the Second Circuit and

the United States Supreme Court, see, e.g., Salinas v. United

States, 522 U.S. 52, 66 (1997) ("The interplay between [the RICO

substantive provision and conspiracy provision] does not permit

us to excuse from the reach of the conspiracy provision an actor

who does not himself commit or agree to commit the two or more

predicate acts requisite to the underlying offense"); United

States v. Zichettello, 208 F.3d 72, 102 (2d Cir. 2000) (noting

the Salinas Court's decision "that a RICO conspiracy conviction

need not be based on agreeing to commit two predicate acts"),

Buscemi continues to cling to the position that the RICO

conspiracy charge requires proof of a conspiracy to commit two or

more of the specific racketeering acts charged in the substantive

RICO count.  As this Court has correctly recognized, however,

16

that is simply not the law; tellingly, Buscemi still cites no
authority in support of his position.[1]

### B.    Sufficiency Of The Evidence

Buscemi claims repeatedly throughout his Rule 29 motion
that there was no evidence at trial linking him to the charged
RICO conspiracy.  This claim, of course, far removed from
reality, particularly when the evidence is viewed in the light
most favorable to the Government.  Despite Buscemi's blanket
denials, the Government introduced powerful evidence of his
association with the Genovese Family, and of his understanding
that his association with the Genovese Family would include the
commission of at least two or more crimes.  That evidence
included the following: (1) a proposed list of new Genovese
Family members, which included Buscemi as the replacement for
Michael Perrone, Ciro Perrone's recently-deceased brother and a
former Genovese Family soldier, and which also included several
other key members of Perrone's crew (GX-100); (2) a series of
calls in which Buscemi and Yannucci discussed Yannucci's illegal

---

[1]    Buscemi's related claim that he "was not tried based on
the charges handed down by the grand jury" (Buscemi Br. 8-9)
fails for the same reasons.  Buscemi's grand jury argument
appears to be predicated on the completely unsupported legal
assumption that the Government had to prove two of the
specifically charged racketeering acts in the substantive RICO
case in order to make out a RICO conspiracy.

activities with respect to Aldo's Pizzeria[2] (GX-1047, 1048, 1049); (3) a coded conversation between Buscemi and Yannucci about Buscemi's having picked up "candy," which Buscemi promises Yannucci will make its way back to Perrone (GX-1016); (3) a recorded conversation between Buscemi and Angelo Laffey in which Laffey asked Buscemi to help him collect a loan, and told Buscemi about the borrower: "The guy fucked up.  Now he's gotta get his fucking ass [U/I]."  (GX-1039); and (5) call records showing that Buscemi spoke with Yannucci – indisputably Perrone's point man for loansharking and gambling, and with whom Buscemi had no particular social or legitimate professional relationship – 215 times over the course of a five-month period in 2004.  (GX-3003). Buscemi's adamant insistence that there was no evidence at trial – far from taking all of this evidence in the light most favorable to the Government, as required under Rule 29 – seeks instead simply to sweep all of that evidence away by merely denying it.  Buscemi does not even come close to satisfying his burden of showing that no rational trier of fact could find Buscemi guilty based on the evidence at trial.

Finally, Buscemi offers a scattershot series of disconnected, self-serving arguments.  For example, Buscemi

---

[2]     While the Government did not contend that the calls proved that Buscemi himself was extorting or collecting money from Aldo's, the calls did prove at a minimum that Buscemi knew Yannucci was doing so, and that Buscemi needed to use coded language to talk to Yannucci about Aldo's.

argues that he could not have been a member or associate of the Genovese Family because he had a job. (Buscemi Br. 6). Of course, the fact that a person has a legitimate job in no way precludes that person from also being affiliated with organized crime. As another example, Buscemi contends that the jury unanimously rejected the entire testimony of John Vitale. (Buscemi Br. At 6). As a basic matter of logic and the law, however, a jury need not accept or reject any testimony wholesale, but rather remains free to accept certain parts while rejecting others. Here, at a minimum, the fact that the jury hung on all of the most significant counts suggests that the jury did not unanimously reject Vitale's testimony in its entirety. In the end, Buscemi's brief is simply an effort, which the parties are not afforded, to re-argue the evidence to this Court. Buscemi does the opposite of what Rule 29 requires, _i.e._, interpret the evidence in the light most favorable to the Government, and he simply does not show that no rational jury could have found him guilty.

## **CONCLUSION**

For the reasons set forth above the Court should deny all of the defendants' post-trial motions.

Dated:      December 21, 2006
            New York, New York

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney


By:_____
    Benjamin Gruenstein
    Elie Honig
    Assistant U.S. Attorneys

<u>**CERTIFICATION OF SERVICE**</u>

I hereby certify that I have caused a copy of the Government's brief in opposition to the post-trial motions of defendants Ciro Perrone and Steve Buscemi to be served on:

Ronald Rubinstein, Esq.
Rubinstein & Corozzo
260 Madison Avenue, 22nd Floor
New York, NY 10016

Roy Kulscar, Esq.
27 Union Square West
New York, New York 10003


by electronic filing on December 21, 2006.


                                             _____
                                             BENJAMIN GRUENSTEIN
                                             Assistant U.S. Attorney